NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0043n.06
Filed: January 14, 2008

No. 06-4127

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| TROY THOMAS, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY, GILMAN, and COOK, Circuit Judges.

PER CURIAM. The defendant, Troy Thomas, appeals his conviction of conspiring to possess with intent to distribute more than 100 grams of heroin, which resulted in the imposition of a sentence of 120 months in prison. He alleges that the district court erroneously admitted into evidence a statement by the defendant himself that he had ingested 12 grams of heroin at the time of his arrest, presumably to conceal that contraband from the police. He also asserts that the district court erred in failing to offer the jury an instruction detailing the limited use to which that contested evidence could be put. We find no reversible error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2005, the Columbus, Ohio, office of the Drug Enforcement Administration (DEA) received information that a package containing almost 1000 grams of heroin sent from New Delhi, India, to 2227 Marcia Drive in Columbus had been intercepted by authorities. The DEA confiscated the contraband and placed a transmitter in the package before delivering it. When an individual later identified as James Tinsley signed for and opened the package at 2227 Marcia Drive, federal agents entered the dwelling and arrested Tinsley.

In an attempt to minimize his connection with the contraband, Tinsley initially told DEA agents that he was merely being paid to accept the package for the defendant. Tinsley also agreed to assist the law enforcement officials in arresting Thomas and made a series of three telephone calls to the defendant's cell phone to set up the transfer of what was to have been a kilogram of heroin at a gas station the men had previously used as a meeting place. When Thomas arrived at the agreed-upon location, however, he was surrounded by officers and arrested. At that time, the defendant was not in possession of contraband narcotics, but did have with him $800 in cash and a cell phone that contained various phone numbers for Tinsley.

At trial, Tinsley explained how he had developed a connection with a Nigerian prisoner awaiting deportation while Tinsley and the Nigerian were incarcerated in the same correctional facility. In August 2005, after both men were released from custody, the

Nigerian sent Tinsley a package containing 100 grams of heroin. Tinsley then used a cutting agent to increase the weight of the heroin from 100 grams to 150 grams and contacted the defendant, who had previously expressed an interest in joining with Tinsley to distribute the drug. Through August and September 2005, Thomas re-sold the heroin to various individuals and met sporadically with Tinsley to transfer the cash proceeds to him. In September 2005, Tinsley received a second package, this one containing 500 grams of heroin, from his Nigerian source. Again Tinsley contacted the defendant, transferred the heroin to Thomas, and eventually received the agreed-upon price from him. After he had been arrested by the authorities, Tinsley contacted the defendant yet again to arrange for the transfer of the kilogram of heroin.

Additional trial testimony was offered by Deputy United States Marshal Nicole Ralston and by inmate Jesse Hosking. Both individuals stated that Thomas complained on November 29, 2005, the day after his arrest, of abdominal pains resulting from his ingestion of 12 grams of heroin immediately before his apprehension by the authorities. Although medical personnel were summoned, an examination of the defendant led the medical staff to conclude that Thomas did not require hospitalization. After taking prescribed medication, the defendant admitted the following day that "he was feeling much better." Hosking also testified that, while incarcerated with Thomas, the defendant admitted that "he was in on . . . the kilo of heroin and that part of it or something was supposed to come to him and he was mad that the guy ratted him out."

Hearing this evidence, the jury convicted Thomas of the single count of conspiring to possess with intent to distribute more than 100 grams of heroin between September 1, 2005, and November 28, 2005. After a sentencing hearing, the district court imposed a prison term of 120 months on the defendant, to be followed by five years of supervised release. From that judgment, the defendant now appeals.

## DISCUSSION

On appeal, Thomas contends that his conviction must be set aside because the district court improperly allowed the jury to hear testimony that Thomas may have ingested 12 grams of heroin immediately before his arrest in this matter. According to the defendant, such information amounted to evidence of a crime other than that charged in the indictment; consequently, he argues, the court should have engaged in the analysis required by this circuit when admitting evidence of other crimes pursuant to the provisions of Rule 404(b) of the Federal Rules of Evidence. Thomas further submits that the district judge should have explicitly instructed the jury that the evidence of that other crime was in no way indicative of guilt of the charged offense.

Our review of a district court's determination of the admissibility of evidence at trial is limited. Indeed, we evaluate such a decision only to determine whether the district judge abused his or her discretion in allowing the testimony to be presented to the jury. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997); *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999). "A district court abuses its discretion, *inter alia*, 'when it

applies the incorrect legal standard [or] misapplies the correct legal standard.'" *In re Grand Jury Subpoenas*, 454 F.3d 511, 515 (6th Cir. 2006) (quoting *Deja Vu of Cincinnati, LLC v. Union Twp. Bd. of Trustees*, 411 F.3d 777, 782 (6th Cir. 2005) (en banc), *cert. denied*, 546 U.S. 1089 (2006)).

Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). That rule additionally provides:

> It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

*Id.*

Although Thomas considers his statement that he ingested 12 grams of heroin to be evidence of a crime *other than* his involvement in a conspiracy involving the approximate kilogram of heroin in the controlled delivery of the package that Tinsley received on November 28, 2005, the defendant misapprehends the scope of the charges against him. As noted above, the indictment charged conspiracy "*[b]eginning on or about September 1, 2005, and continuing through on or about November 28, 2005 . . . .*" (Emphasis added.)

- 5 -

Indeed, the district judge found that Thomas's alleged possession of 12 grams of heroin at the time of his arrest was relevant to the conspiracy charge. As he noted in his oral ruling allowing Deputy Marshal Ralston's testimony, "It may also come in under 404(b) but I think that the evidence comes in under 801(d)(2) and without a limit[ing] instruction. I mean it is an admission, it's almost like a confession." We agree. The evidence that the defendant was in possession of 12 grams of heroin (an amount that a trial witness testified exceeded that usually possessed by a simple user of the drug) on the date of his arrest was probative of Thomas's involvement in the ongoing conspiracy that included earlier distributions of 150-gram and 500-gram shipments of heroin. As a result, the district judge did not abuse his discretion in concluding that the defendant's uncoerced statement to a deputy United States marshal that he was in possession of a substantial amount of heroin on November 28, 2005, was an admission, *see* Fed. R. Evid. 801(d)(2), and not evidence of involvement in another, uncharged criminal offense.

Moreover, even if the ruling were considered erroneous, any such error was harmless in this instance. Without Deputy Marshal Ralston's testimony about Thomas's ingestion of heroin at the time of his arrest, the jury still had before it for its deliberations testimony from James Tinsley concerning the scope and operations of the conspiracy, the tape-recorded phone calls between Tinsley and Thomas discussing the defendant's worry about not hearing from Tinsley and going over plans for meeting for the exchange, and another inmate's testimony that Thomas admitted that he was "in on the kilo of heroin" and

that he was ratted out by Tinsley. All this evidence was sufficient to convict the defendant of the conspiracy charge without reference to his ingestion of 12 grams of heroin.

Similarly, the district judge did not err in declining to give a limiting instruction to the jury that the heroin ingested by Thomas "was not the heroin charged in the indictment." This allegation of error by Thomas is again premised upon his misapprehension that the evidence of his ingestion of heroin was Rule 404(b) testimony regarding prior crimes or acts of the defendant. In fact, however, the testimony of Deputy Marshal Ralston did not concern "other" crimes committed by the defendant. Although Thomas is correct that the 12 grams of heroin allegedly ingested by the defendant could not have come from the kilogram of heroin that had been confiscated by DEA agents prior to the controlled delivery to Tinsley, the crime for which Thomas was on trial was a conspiracy that extended over a three-month period. During that time, Thomas was involved in the resale of approximately 650 grams of heroin received from Tinsley, a sufficiently large amount that it would not be surprising that the defendant was in possession of some amount of that heroin at the time of his arrest.

Again, even if we were to consider the failure to offer a limiting instruction error, any such error clearly was harmless. The jury had before it sufficient, if not overwhelming, evidence of the defendant's complicity in a drug-trafficking conspiracy with Tinsley involving more than 100 grams of heroin. Thus, "[a]ny error, defect, irregularity, or variance" in this

matter did not affect substantial rights of the defendant and must be disregarded.  Fed. R.

Crim. Proc. 52(a).

## **CONCLUSION**

The trial testimony concerning the defendant's ingestion of 12 grams of heroin

shortly before his arrest by the authorities was not admitted pursuant to Rule 404(b) of the

Federal Rules of Evidence as evidence of prior crimes or wrongs committed by Thomas.

Instead, the defendant's statement served as an admission of his possession of narcotics

relevant to the three-month conspiracy with Tinsley to distribute heroin.  The district court

did not err in admitting that testimony or in failing to give a limiting instruction to the jury,

and the judgment entered by the court is therefore AFFIRMED.